UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LAMONT VICTOR GARRETT,<br><br>Defendant. | 4:24-CR-40137-RAL<br><br><br>OPINION AND ORDER ON MOTIONS IN LIMINE AND OTHER EVIDENTIARY ISSUES |

A grand jury indicted Lamont Victor Garrett with one count of Possession of Ammunition by a Prohibited Person for knowingly possessing ammunition while being both a felon and an unlawful user of a controlled substance. Doc. 59. Garrett has pleaded not guilty to the charged offense and has exercised his right to a jury trial. In preparation for trial, the Government filed a Notice of Expert Witness: Scott Lee, Doc. 65, Notice of Expert Witness: Eric Bogenhagen, Doc. 66, Notice of Expert Witness: Carson Klinkhammer, Doc. 67, Notice of Intent to Offer Evidence Pursuant to Fed. R. Evid. 404(b), Doc. 69; Notice of Intent to Offer Evidence Pursuant to Fed. R. Evid. 609, Doc. 77, and motions in limine, Doc. 78. Garrett filed his own Notice of Expert Witness: Carson Klinkhammer, Doc. 64, an objection to the Government's Notice of Intent to Offer Evidence Pursuant to Fed. R. Evid. 404(b), Doc. 73, and motions in limine, Doc. 75. On June 4, 2025, this Court held a pretrial conference and motion hearing where it heard argument and ruled on the motions in limine and objections. This Court now formalizes its rulings with this Opinion and Order.

1

I.  **Legal Standard**

Rulings on motions in limine are by their nature preliminary. United States v. Spotted Horse, 916 F.3d 686, 693 (8th Cir. 2019). They are "developed pursuant to the district court's inherent authority to manage the course of trials," Luce v. United States, 469 U.S. 38, 41 n.4 (1984), and are "specifically designed to streamline the presentation of evidence and avoid unnecessary mistrials," Spotted Horse, 916 F.3d at 693. This practice helps safeguard the jury from hearing evidence so prejudicial that its mention could not be remedied through a corrective instruction. Motion in limine, Black's Law Dictionary (11th ed. 2019). Rulings on motions in limine necessarily occur before the nature and relevance of the evidence can be placed in full context. See Spotted Horse, 916 F.3d at 693. Therefore, a district court has broad discretion when ruling on motions in limine and retains the authority to revisit and change its rulings based on how the case unfolds. Luce, 469 U.S. at 41–42. If this Court grants a motion in limine to exclude certain information, that information must not be mentioned during voir dire, opening statements, questioning or answering by witnesses, or closing arguments, unless counsel outside the hearing of the jury obtain a contrary ruling.

II.  **Discussion**

   A. **Rule 404(b) Evidence**[1]

Pursuant to Fed. R. Evid. 404(b), the Government seeks to admit testimony that Garrett kept a .22 revolver on his person and that he had a firearm in his possession in mid-July 2024. Doc. 69. Garrett objects to the Government's notice to admit such evidence and attaches to counsel's affidavit interviews where witnesses spoke of Garrett allegedly distributing 30 to 40

---

[1] This Court is not assuming that Garrett committed the prior acts by conducting this analysis.

pounds of methamphetamine weekly, trafficking in firearms, and on or about August 28, 2024, brandishing a firearm while making a threat to kill someone and her family. Docs. 73, 74.

Under the Federal Rules of Evidence 404(b), while "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character," it is admissible in a criminal case to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." "Rule 404(b) is a rule of inclusion, prohibiting only evidence that tends solely to prove the defendant's criminal disposition." United States v. Ali, 799 F.3d 1008, 1026 (8th Cir. 2015) (cleaned up and citation omitted). In the Eighth Circuit, a prior act is admissible under Rule 404(b) if it is: "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect."[2] United States v. LaRoche, 83 F.4th 682, 690 (8th Cir. 2023) (cleaned up and citation omitted).

Testimony about Garrett's involvement with controlled substances and firearm trafficking is relevant to whether he knowingly possessed ammunition and whether he did so unlawfully as a drug user. Whether the evidence is similar in kind and not overly remote in time to the crime charged is a somewhat more difficult inquiry given the nature of Garrett's positive drug test. "[T]he prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent." United States v. Walker, 470 F.3d 1271, 1275 (8th Cir. 2006) (cleaned up and citation omitted). In Walker, the Eighth Circuit held that a prior armed robbery conviction was

---

[2] The Eighth Circuit has expressed the fourth element of the test in different ways in different cases. See United States v. Johnson, 860 F.3d 1133, 1142 (8th Cir. 2017) (expressing fourth element as "not have a prejudicial value that substantially outweighs its probative value" borrowing from Rule 403 of the Federal Rules of Evidence); see also United States v. Johnson, 439 F.3d 947, 952 (8th Cir. 2006). This Court will follow how the Eighth Circuit framed the fourth element in LaRoche as its most recent case on the Rule 404(b) test.

3

sufficiently similar to a felon-in-possession offense because "each involved his possession of a firearm in connection with a criminal act." Id. Moreover, "there is no fixed period within which the prior acts must have occurred." United States v. Baker, 82 F.3d 273, 276 (8th Cir. 1996). Rather, this Court must "apply a reasonableness standard, evaluating the facts and circumstances of each case." Walker, 470 F.3d at 1275. However, the Eight Circuit has "generally been reluctant to uphold the introduction of evidence relating to acts or crimes which occurred more than thirteen years prior to the conduct challenged." United States v. Halk, 634 F.3d 482, 487 (8th Cir. 2011). The testimony appears to connect Garrett to street drugs and guns in and around July and August of 2024, close in time to the prohibited possession of ammunition on August 21, 2024. Drug dealing of pound quantities of methamphetamine is not particularly similar to Garrett's alleged unlawful drug use, which appears to involve marijuana.

Whether the prior acts are supported by sufficient evidence is something this Court cannot gauge fully until trial. Whether the evidence's probative value is higher than its prejudicial effect is the most difficult question here. Testimony that Garrett had street drugs or possessed any firearm close in time to August 21, 2024, is not more unfairly prejudicial than probative. But testimony that Garrett allegedly was selling 30 to 40 pounds of methamphetamine per week or used a handgun to threaten to kill someone and her family strikes this Court as more unfairly prejudicial than probative. Thus, such testimony of the alleged quantity of methamphetamine trafficking and the use of a firearm to threaten to kill someone should not be mentioned during voir dire, opening statements, or witness testimony. But Garrett's possession of a firearm around the time of the alleged offense appears to be admissible.

**B. Rule 609 Evidence**

4

Pursuant to Fed. R. Evid. 609, the Government next seeks to admit the following prior felony conviction of Garrett if he testifies: "Conspiracy to Manufacture and Distribute 50 Grams or More Crack Cocaine and 500 Grams or More of Powder Cocaine and Aiding and Abetting the Distribution of 27.3 Grams of Crack Cocaine, on or about June 22, 2006, with the judgment entered on June 29, 2006, in United States District Court for the Northern District of Iowa." Doc. 77.

Under Rule 609(a), a defendant's prior conviction may be used to attack the defendant's character for truthfulness, should the defendant choose to testify, if the crime of conviction was a felony offense and "the probative value of admitting this evidence outweighs its prejudicial effect" to the defendant. United States v. Collier, 527 F.3d 695, 699 (8th Cir. 2008); see United States v. Stoltz, 683 F.3d 934, 938–39 (8th Cir. 2012) (discussing how Rule 609(a) applies to witnesses generally, not a defendant who testifies). However, "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime require proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2); United States v. Smart, 60 F.4th 1084, 1092 (8th Cir. 2023). "Evidence of a conviction requiring proof or admission of an act of dishonesty or false statement is automatically admissible and not subject to Rule 403 balancing." Collier, 527 F.3d at 700.

If more than ten years have passed since the offered conviction or the witness's release from confinement for the conviction, whichever is later, the evidence is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect" and "the proponent gives an adverse party reasonable written notice of the intent to use it." Fed. R. Evid. 609(b). When admitting evidence of a prior felony conviction, courts may limit the evidence to "whether a conviction was obtained, when the conviction was obtained, and what the conviction was for." See United States v. Wesley, 990 F.2d 360, 366 (8th Cir. 1993).

5

But see United States v. White, 222 F.3d 363, 370 (7th Cir. 2000) (holding that details of prior conviction are usually not given to the jury but can be when the defendant "opens the door" to further details by trying to deny, minimize, or explain the conviction away).

Here, the parties are entering into a stipulation regarding Garrett's prior felony conviction in the United States District Court for the Northern District of Iowa. The Government agrees that details of the conviction or punishment are inadmissible unless Garrett testifies in a way that opens the door to admissibility. This Court agrees.

### C. Government's Motions in Limine

The Government's Motions in Limine, Doc. 78, has eight subparts and seeks to (1) exclude reference to penalty and punishment; (2) exclude opining on the guilt or innocence of the Defendant; (3) exclude reference to matters required to be raised by pretrial motion under Fed. R. Crim. P. 12(b)(3); (4) exclude reference to the Government's charging decisions in this matter; (5) exclude evidence or argument relating to the jury's power of nullification; (6) exclude hearsay statements of Garrett offered by Garrett; (7) permit Sioux Falls Police Detective Scott Seiner to sit at counsel's table during trial; (8) sequester witnesses from the courtroom. Each is addressed below.

#### 1. Reference to Penalty or Punishment

Under subpart one, the Government moves to preclude Garrett, his attorney, and any witness from referring to the possible penalty or punishment Garrett will face if convicted of the crime charged. "It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." Shannon v. United States, 512 U.S. 573, 579 (1994) (cleaned up and citation omitted). The jury's role "is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged."

Id. "[P]roviding jurors sentencing information invites them to ponder matters . . . not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. (citation omitted). The jury must be able to carry out its role uninfluenced by the consequence of its verdict. See id. at 578 (citation omitted); United States v. Fisher, 10 F.3d 115, 121 (3d Cir. 1993) ("[F]ederal criminal juries are almost never instructed concerning the consequences of verdicts."). Accordingly, this Court grants the Government's motion as to subpart one. There shall be no reference to or comment on the possible penalty or punishment Garrett could receive if convicted. This does not, however, preclude Garrett from referring to the charge as a "serious" or "felony" offense.

### 2. Opining on Guilt or Innocence

Under subpart two, the Government requests an order barring Garrett, his attorney, and any witnesses from expressing their opinion about the guilt or innocence of Garrett. Evidence expressing an opinion on a defendant's innocence or guilt "invades the province of the jury" and is inadmissible. See United States v. Thirion, 813 F.2d 146, 156 (8th Cir. 1987) (reasoning that a government witness's opinion that defendant was innocent "is not truly exculpatory evidence because it is inadmissible as it invades the province of the jury"); Wesson v. United States, 164 F.2d 50, 55 (8th Cir. 1947) ("And any such unnecessary opinion evidence in a criminal case that will inescapably be a plain expression of the witness's opinion of the defendant's guilt . . . should be scrupulously avoided."). Therefore, neither Garrett, the attorneys, nor any witnesses may opine on the guilt or innocence of Garrett. This, of course, does not preclude Garrett from potentially testifying about his innocence nor prevent his attorney from asserting actual innocence or arguing that the evidence presented at trial does not establish guilt beyond a reasonable doubt.

### 3. Reference to Matters Required to Be Raised by Pretrial Motion (Fed. R. Crim. P. 12(b)(3))

Next, the Government seeks to prohibit Garrett from referencing matters that should have been brought before this Court by pretrial motion under Fed. R. Crim. P. 12(b)(3). In relevant part, Rule 12(b)(3) provides that:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
> (A) a defect in instituting the prosecution, including:
>   (i) improper venue;
>   (ii) preindictment delay;
>   (iii) a violation of the constitutional right to a speedy trial;
>   (iv) selective or vindictive prosecution; and
>   (v) an error in the grand-jury proceeding or preliminary hearing;
> (B) a defect in the indictment or information, including:
>   (i) joining two or more offenses in the same count (duplicity);
>   (ii) charging the same offense in more than one count (multiplicity);
>   (iii) lack of specificity;
>   (iv) improper joinder; and
>   (v) failure to state an offense;
> (C) suppression of evidence;
> (D) severance of charges or defendants under Rule 14; and
> (E) discovery under Rule 16.

Additionally, although not explicitly listed under Rule 12(b)(3), a defendant's argument that law enforcement engaged in "outrageous government conduct"[3] is a question of law and therefore must be "raised as a pre-trial motion to dismiss the indictment." United States v. Nguyen, 250 F.3d 643, 645–46 (8th Cir. 2001) (stating that the failure to file a pre-trial motion to dismiss the indictment

---

[3] Outrageous governmental conduct refers to "conduct of law enforcement agents [that] is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." United States v. Russell, 411 U.S. 423, 431–32 (1973). The United States Court of Appeals for the Eighth Circuit has stated that "[t]he level of outrageousness needed to prove a due process violation is 'quite high,' and the government's conduct must 'shock the conscience of the court.'" United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999) (quoting United States v. Pardue, 983 F.2d 835, 847 (8th Cir. 1993)).

8

based on outrageous government conduct "waives the issue") (citing United States v. Henderson-Durand, 985 F.2d 970, 973 n.4 (8th Cir. 1993)); see also United States v. Duncan, 896 F.2d 271, 274–75 (7th Cir. 1990) (agreeing "with the Second Circuit that an outrageous governmental conduct defense must be made the subject of a pre-trial motion" (citing United States v. Nunez-Rios, 622 F.2d 1093, 1098 (2nd Cir. 1980)).

Unless otherwise set by the court, the deadline to file motions under Rule 12(b)(3) is the start of trial. Fed. R. Crim. P. 12(c)(1), (c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely."); see United States v. Trancheff, 633 F.3d 696, 697 (8th Cir. 2011). In this case, the deadline for filing such motions was May 27, 2025. Doc. 63. A party's failure "to [timely] file a pretrial motion by the deadline" constitutes a waiver of that issue. Trancheff, 633 F.3d at 697. Although a court has the discretion to excuse a waiver and review an untimely filed pretrial motion, id., the party seeking the court's review must show good cause, meaning they "must show both cause and prejudice." United States v. Mayer, 63 F.4th 680, 683 (8th Cir. 2023) (citation omitted). Thus, absent good cause shown, Garrett may not raise or argue a defense, objection, or request enumerated under Rule 12(b)(3) at trial.

### 4. Reference to Government's Charging Decisions in This Matter

The Government requests an order preventing Garrett, defense counsel, and any witness from making direct or indirect reference to the Government's charging decision in this matter. References to the Government's charging decisions generally offer "minimum probative value" and are typically "outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury." United States v. Reed, 641 F.3d 992, 993-94 (8th Cir. 2011) (collecting cases where other courts of appeal upheld exclusion of evidence of prior charging decisions); United States v. Noske, 117 F.3d 1053, 1058 (8th Cir. 1997) (affirming district court's exclusion

9

of IRS agent's recommendation against prosecuting defendant). This Court grants subpart four of the Government's motion in limine.

### 5. Jury Nullification

Subpart five seeks to prevent Garrett, defense counsel, and any witness from making direct or indirect reference to jury nullification. Such information is not relevant to Garrett's guilt or innocence. See also United States v. Thomas, 116 F.3d 606, 615 (2d Cir. 1997) ("[T]he power of juries to 'nullify' or exercise a power of lenity is just that – a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."). This Court grants subpart five of the Government's Motions in Limine.

### 6. Hearsay Statements Made by Garrett Offered by Garrett

In subpart six, the Government seeks to prevent Garrett from admitting into evidence out-of-court statements that he may have made regarding his guilt or innocence. The Government specifically seeks to exclude Garrett from admitting a denial through a witness to avoid taking the stand. The Government argues that such statements are hearsay and inadmissible under Rule 801 of the Federal Rules of Evidence. Unless an exception otherwise applies, a defendant's out-of-court statements, if offered by the defendant to prove the truth of the matter asserted, are inadmissible as hearsay. Fed. R. Evid. 801(c)–(d); see United States v. White Horse, 177 F. Supp. 2d 973, 977 (D.S.D. 2001) (reasoning that defendant's statements to a doctor were inadmissible hearsay because they were offered by the defendant and were not offered under the exception for statements made for the purpose of diagnosis or treatment). Accordingly, any out-of-court statement made and offered by Garrett to prove the truth of the matter asserted is inadmissible unless Garrett can show that the statement is admissible under an exception to the rule against hearsay. Under Fed. R. Evid. 801(d)(2)(A), out-of-court statements made by a party and offered

against that party is not hearsay. Thus, when offered by the Government, Garrett's out-of-court statements are not hearsay under Fed. R. Evid. 801(d)(2)(A). However, absent some other hearsay exception, Garrett is prohibited from admitting into evidence his own out-of-court statements. See United States v. Waters, 194 F.3d 926, 931 (8th Cir. 1999) (holding that defendant could not admit his own out-of-court statements to FBI agent because they were inadmissible hearsay).

### 7. Request for Detective to Sit at Counsel Table

Subpart seven requests that Sioux Falls Police Detective Scott Seiner be allowed to sit at counsel table during trial. Garrett, in his motions in limine, seeks to prohibit Detective Seiner from sitting at counsel's table. "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. However, Fed. R. Evid. 615 does not authorize the exclusion of "one officer or employee of a party that is not a natural person if that officer or employee has been designated as the party's representative by its attorney." "A person designated as a party's representative can be present in the courtroom during witness testimony, and [t]he decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion." United States v. Engelmann, 701 F.3d 874, 877 (8th Cir. 2012) (cleaned up and citation omitted).

Detective Scott Seiner is the main case agent involved in the case. The Government asserts that his presence is essential to presenting its case, and as such, has designated Detective Seiner as a party representative. Accordingly, Fed. R. Evid. 615 "does not authorize [this Court from] excluding" Detective Seiner from the courtroom under a sequestration order. Detective Seiner has written reports and recorded his interaction with Garrett so there is little risk that being in the courtroom somehow will influence him to change his testimony; much of what he could testify about is in those reports written prior to the start of trial. Garrett cited no authority to support

11

arguments for excluding the Government's case agent from the courtroom. This Court grants subpart seven of the Government's motion in limine.

### 8. Sequestration of Witnesses

Subpart eight of the Government's Motions in Limine requests an order sequestering all witnesses, except for Detective Scott Seiner. "The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and aid in the detection of dishonesty." Engelmann, 701 F.3d at 877 (citation omitted). "At a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615; see Engelmann, 701 F.3d at 877. Generally, a "district court is granted wide latitude in implementing sequestration orders." Engelmann, 701 F.3d at 877 (citation omitted). And "the decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion." Id. (cleaned up and citation omitted). Therefore, all fact witnesses—whether for the Government or Garrett—will be sequestered, except for Detective Seiner. Garrett of course is entitled to be in the courtroom throughout the trial.

### D. Garrett's Motions in Limine

Garrett's Motions in Limine, Doc. 75, has fourteen subparts and seeks to (1) sequester witnesses from the courtroom; (2) prohibit Detective Scott Seiner or any law enforcement officer from sitting at counsel table with the Assistant United States Attorney; (3) prohibit any Government agent other than the Assistant United States Attorney from "de-briefing" any Government witness who testifies pursuant to a plea agreement; (4) exclude evidence related to the nature or specifics of any prior conviction of Garrett if Garrett chooses to testify; (5) prohibit or limit the Government from eliciting testimony from a witness about the witness's observations

12

Garrett buying or selling drugs; (6) prohibit any law enforcement officer or Government witness from stating an opinion on whether Garrett knowingly possessed a firearm; (7) prohibit Government from offering evidence of any arrests, adjudications of guilt, or convictions of Garrett that have not been stipulated to; (8) exclude any discussion regarding Garrett's choice whether to testify or not; (9) prohibit evidence of Garrett's crimes, wrongs, or bad acts probative of crimes with which he is charged but are substantially more prejudicial; (10) to provide names of informants; (11) require the Government to disclose all inducements given to Government witnesses to testify; (12) require the Government to disclose any evidence that would impeach government witnesses or show bias; (13) require the Government to disclose grand jury testimony and evidence; and (14) allow Garrett to appear in civilian clothing during trial. Doc. 75.

### 1. Sequestration of Witnesses

Subpart one is granted to the extent outlined above for subpart eight of the Government's Motions in Limine.

### 2. Detective Seiner Sitting at Counsel Table

Subpart two is denied as outlined for subpart seven of the Government's Motions in Limine.

### 3. Government De-Briefing

Subpart three seeks to prohibit any Government agent, other than the Assistant United States Attorney, from de-briefing any of the Government's witnesses who testify pursuant to a plea or cooperation agreement with the Government after the witness has testified. The purpose of a sequestration order is "to prevent witnesses from tailoring their testimony to that of prior witnesses." United States v. Engelmann, 701 F.3d 874, 878 (8th Cir. 2012). However, "[u]nless a district court specifies otherwise in a particular sequestration order, sequestration orders

under Rule 615 do not forbid all contact with all trial witnesses at all times." Id. at 877. This Court will direct that the Government not discuss the testimony of any witness with the witness between the time the witness is called and when the witness is released from subpoena or no longer subject to being recalled, but otherwise the motion is denied.

### 4. Nature or Specifics of Prior Convictions

Subpart four is granted to the extent already discussed above regarding the Government's intent to offer evidence pursuant to Fed. R. Evid. 609.

### 5. Testimony Regarding Drug Sales

The issue raised in subpart five is addressed in Part II.A. above.

### 6. Opinion Evidence on Mental State

Subpart six seeks to exclude any Government witness from offering an opinion on whether Garrett knowingly possessed the ammunition that is the subject of the Superseding Indictment. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, an expert in a criminal case "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b); see also United States v. Brown, 241 F. Appx. 890, 893 (3d Cir. 2007) (stating that an "expert witness is thus prohibited from testifying that a defendant knowingly possessed or had the intent to distribute a controlled substance" where defendant was charged with violating 21 U.S.C. § 841(a)(1)). "The exception does not apply in civil cases or affect lay witness testimony." Diaz v. United States, 602 U.S. 526, 534 (2024).

None of the Government's three proposed expert witnesses have been offered to give an opinion on whether Garrett knowingly possessed ammunition. Docs. 65, 66, 67. The Government

appears not to intend to elicit opinion testimony on Garrett's possession of ammunition, but rather evidence about where the ammunition was found and who stayed in the room and other such matters to tie the ammunition allegedly to Garrett.

### 7. Arrests, Adjudications of Guilt, or Prior Convictions

Subpart seven seeks to exclude evidence regarding any arrests, adjudication of guilt, or conviction of Garrett which has not been stipulated to by the parties. The Government does not oppose the motion, except regarding Garrett's prior felony conviction and arrest on the charges at issue in this case. This motion in limine is thus granted to exclude other arrests and convictions besides the prior federal felony offense and his arrest on the charges in this case.

### 8. Garrett's Decision to Testify or Not

Subpart eight seeks to preclude the Government or any other witnesses from making comments or references as to Garrett's decision to testify or not. No person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Accordingly, "the Fifth Amendment 'forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.'" United States v. Long, 721 F.3d 920, 925-26 (quoting Griffin v. California, 380 U.S. 609, 615 (1965)). Thus, this Court grants subpart eight of Garrett's Motions in Limine.

### 9. Prior Bad Acts

Subpart nine seeks to prohibit the Government from presenting any other evidence of prior bad acts that is substantially more prejudicial than probative. Under Fed. R. Evid. 404(b)(3), the Government must provide written notice of the Government's intent to offer such evidence at trial. The Government provided notice of an intent to offer evidence that Garrett kept a .22 revolver on his person and that he had a firearm in his possession in mid-July 2024. Doc. 69. This Court

15

addressed Garrett's opposition to that specific evidence above. To the extent the Government seeks to offer any additional prior bad act evidence other than what is addressed in party II.A. of this opinion and order, subpart nine of Garrett's Motions in Limine is granted.

### 10. Names of Informants

Subpart ten seeks an order from this Court requiring the Government to disclose the identities of the Government's confidential informants. "[T]he government has an obligation to disclose the identity of a confidential informant [w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." United States v. Sanchez, 429 F.3d 753, 756 (8th Cir. 2005) (citing Roviaro v. United States, 353 U.S. 53, 60–61 (1957)). "[I]f the informant is an active participant in the conduct charged, the informant's identity is almost always material and thus the government must make every reasonable effort to have the informant made available to the defendant." Id. (cleaned up and citation omitted). "If, on the other hand, the informant is a mere 'tipster,' there is generally a strong presumption against disclosure." United States v. Clark, 2021 WL 6427712, at *14 (D. Minn. Sept. 15, 2021) (cleaned up and citation omitted). A "tipster" is "someone who conveys information to the government but who does not participate in the offense." United States v. Gonzalez-Rodriguez, 239 F.3d 948, 951 (8th Cir. 2001). Discussion at the motion hearing revealed that Garrett has received this information regarding those informants or cooperators potentially testifying against him.

### 11. Inducements

Subpart eleven seeks an order from this Court requiring the Government to disclose any inducements given to Government witnesses. Under Brady v. Maryland, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Included among the evidence that Brady obligates the prosecution to disclose is both exculpatory evidence and impeachment evidence, that is, "evidence affecting credibility," Giglio v. United States, 405 U.S. 150, 154 (1972), or "evidence that the defense might [use] to impeach the Government's witnesses by showing bias or interest," United States v. Bagley, 473 U.S. 667, 676 (1985). Evidence affecting the credibility of a witness includes "promises that may have been made to that witness." United States v. Rushing, 313 F.3d 428, 436 (8th Cir. 2002). For example, "a defendant is entitled to know of a promise to drop charges against a key witness if that witness testifies for the government." United States v. Morton, 412 F.3d 901, 906 (8th Cir. 2005). Accordingly, the Government is obligated to disclose to Garrett any inducements provided to Government witnesses. To the extent the Government has not yet disclosed to Garrett any inducements, subpart eleven of Garrett's Motions in Limine is granted.

### 12. Government Witness Impeachment Evidence

Subpart twelve of Garrett's motion in limine seeks an order from this Court requiring the Government to produce any evidence tending to impeach government witnesses. As outlined above, the Government has an obligation under Brady and Giglio to disclose such evidence to the defense. Thus, to the extent there is additional evidence not previously disclosed to Garrett, subpart twelve of Garrett's Motions in Limine is granted.

### 13. Grand Jury Evidence

In subpart 13 of Garrett's Motions in Limine, Garrett seeks an order requiring the Government to disclose grand jury testimony and exhibits presented to the grand jury. Garrett is seeking this evidence in order to "determine whether there were violations of Fed. R. Crim. P. 6(e)

17

. . . which would allow Defendant Garrett to file a second Motion seeking dismissal of the Indictment." Doc. 75 at 3–4.

There is a "long-established policy that maintains the secrecy of grand jury proceedings in the federal courts." Dennis v. United States, 384 U.S. 855, 869 (1966) (cleaned up and citation omitted). However, Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) authorizes disclosure of grand jury materials to a defendant "who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," but the defendant must show a "particularized need" for the material. United States v. Broyles, 37 F.3d 1314, 1318 (8th Cir. 1994). "[B]are allegation[s] that the records [of a grand jury] are necessary to determine if there may be a defect in the grand jury process does not satisfy the 'particularized need' requirement." Id. (citation omitted). The Government in the District of South Dakota typically discloses grand jury transcripts on the Friday before the jury trial, which in turn typically starts on the next Tuesday. This jury trial starts on Monday afternoon, June 9, 2025. The Government agreed to aim for its disclosure of the grand jury transcripts by end of day Thursday, June 5, 2025, and that is what this Court orders for any transcript then available.

**14. Civilian Clothing**

"A prisoner may not be compelled to go to trial in prison clothing." United States v. Rojas, 356 F.3d 876, 879 (8th Cir. 2004) (citing Estelle v. Williams, 425 U.S. 501, 504–05 (1976). The Supreme Court in Estelle v. Williams reasoned that "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." 425 U.S. at 504–05. Accordingly, Garrett cannot be compelled to wear prison clothing during trial, and subpart fourteen of Garrett's Motions in Limine is granted.

**III.   Conclusion**

Therefore, it is hereby

ORDERED that the Government's Motions in Limine, Doc. 78, are granted to the extent stated herein. It is further

ORDERED that Garrett's Motions in Limine, Doc. 75, are granted to the extent stated herein. It is further

ORDERED that Garrett's objections to the Notice of Intent to Offer Fed. R. Evid. 404(b) are overruled in part as set forth herein.

DATED this 4th day of June, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE